Case number 1939-84, Stephen Cook v. Ohio National Life Insurance Company et al. Arguments not to exceed 15 minutes per side. Mr. Garrett, you may proceed for the appellant. Good afternoon, your honors. May it please the court, I'm Nathaniel Garrett on behalf of the plaintiff appellant, Stephen Cook, a financial representative. Mr. Cook and other financial representatives are suffering an ongoing financial harm. Ohio National is keeping money that belongs to the representatives. The issue before this court on appeal is whether the representatives have a claim against Ohio National for their losses, and they absolutely do. Representatives were indispensable parties to the sales of Ohio National's variable annuities. The annuities could not be sold without the efforts of the representatives. This case concerns trail commissions that were paid on previously sold active annuities for which were paid up until December 12, 2018. After that point, Ohio National simply kept the commissions for themselves. Now, as to the contract claim... Mr. Garrett, could I just ask you a question? Is there any sense in which Ohio National has not delivered on its obligations to Triad? They have not, your honor. They have not. The commissions right now are with Ohio National, but I guess my point is why isn't Triad in the lawsuit, and is there litigation where Triad is saying to Ohio National, you owe us money? There is no litigation, your honor, between Triad and Ohio National. There is a lawsuit out there that involves other broker-dealers against Ohio National, but there is no dispute that the broker-dealers do not have the money, nor do the broker-dealers have the money to sue Ohio National. But why can't I assume that Ohio National is complying with its obligation to Triad if Triad is not suing it? Your honor, you don't need to because it's based on what is in contained in the pleadings. We know that if the broker-dealer, if Triad had received the commissions, they have an obligation to pay the representatives, and that the broker-dealer does not have possession because they would have been obligated to provide that to the representatives. That is not the case here. The broker-dealers, multiple broker-dealers are suing Ohio National across the country, including a putative class action that's before the Southern District of Ohio. Maybe another way to put the question is, what part of the contract between Ohio National and Triad has Ohio National breached as to Triad? So, I realize you have a third-party claim, but I'm just trying to understand what's going on between the parties. Is there a part of the contract where you can say Ohio National promised X to Triad and it is not delivered on X? Yes, your honor. I would point the court to the commission schedules, in particular on page ID 109, for example. There's various commission schedules for different types of variable annuities that were sold, and the language that is included on the commission schedule is that the payment of these reoccurring trail commissions will continue until the annuity has been surrendered or annuitized. This lawsuit is dealing strictly with active annuities for which these trail commissions should continue to be paid. Now, that language in the commission schedule is coupled with section 9, which says that if this own agreement is terminated, the terms of the compensation shall survive the termination. So, there's a savings clause there, and it's those two things together which shows that Ohio National is supposed to be paying these trail commissions on active annuities that have not been surrendered, and unless there's been termination for cause, there has not been termination for cause here. So, the prerequisites, if you will. On this section 9 of the agreement, it says that the payment of compensation will be Triad's responsibility. It would seem to separate out completely the responsibility on the part of the defendant here. You follow me? Yes, your honor, and you're absolutely correct. The responsibility to pay the trail commissions is on the promisee, which is significant here because the controlling law says in order for a party to be an intended third-party beneficiary, you look at the promisee's intent. Now, the district court and some judges would look at this and say, well, there's clearly no intent for Ohio National to pay the representatives directly, and we agree with that. That is correct, but the selling agreement obligates, in fact creates a contractual obligation on the part of promisee, the broker-dealers to pay those commissions to the representatives, and the language that you just pointed out, Judge Merritt, is where that comes from. It's the broker-dealer that is promising to pay the commissions, and that's significant here because Ohio follows the intent to benefit test, and it simply stated the applicable law is if the promisee intends for a third party to benefit, then that party has standing to suit the breach of contract. So, we have a clear... Just to follow up on Judge Merritt's question, I mean, that's a bit of a magic trick because we'll call the promisee the one that's supposed to eventually deliver on the obligation, but in the same section, it makes it clear that whoever delivers on it, it's not Ohio National. That seems like alchemy that you suddenly convert somebody who says I'm not responsible into being responsible. Your Honor, I don't think that that's the case. The money originates from the selling agreement, and there's no dispute that Ohio National pays it to the broker-dealer, and then the broker-dealer pays it for the benefit of the representatives. So, there is no requirement that the promisor have intended for the money to go to the representatives. That is not a requirement under the restatement of law. It's not a requirement under the intent to benefit test. You look at what is the promisee doing, and very clearly here, Section 9 indicates that this is the embodiment of the broker-dealer's intent for representatives to get commissions, and that's why they agree, the broker-dealer agrees to enter into a separate contract and says the payment will be its responsibility. How about this way of thinking about it? Would you lose if Triad came in and said Ohio National owes us nothing? Your Honor, I think that that is true because, as you know, a third-party beneficiary only gets the same rights as the broker-dealer, as the party to the contract. Now, if broker-dealer came in and says we don't want the money, well, no, that's not the case. If there was something in the contract which shows that the broker-dealer was not entitled to the money, then that would be true that the representatives would also not be entitled to the money as third-party beneficiary. They get the same rights that a signatory to the contract has, but that does not foreclose a third-party beneficiary claim, and that's where we're at right here on the pleadings. It's very clear what the selling agreement intends. In fact, what has actually happened here is that the representatives had been receiving commissions that originated from the selling agreement, had been paid to the broker-dealer, and then the broker-dealer ensured that the representatives received it. Now, that would be separate, and it would have no bearing, though, on the unjust enrichment claim, which the equities here, Your Honor, are entirely one-sided, and frankly, Ohio National and the Dish Report have not considered— Why haven't you sued Triad? Your Honor, Triad does not have the commissions. The commissions are what have they done wrong, even if we— You could sue them and require them to sue Ohio National. If you say it all flows through Triad, why wouldn't you require them to seek the commissions on your behalf? Your Honor, because we have a direct claim, because the language of the selling agreement shows an intent for representatives to receive it, and it's that fact. The analysis really is that simple and straightforward. The fact that there's an allocation going to the representative, it permits them to be able to go after Ohio National directly. There should not be— Do you get that in this agreement, in commissions payable under Section 9? Section 9. I think Section 9 is important. I think the selling agreement as a whole shows that it's generally for the benefit of representatives because it shows, here's what you need to do to— I don't see how you can read Section 9 to create this liability. It looks like it's the opposite language. It's the opposite from what you're claiming. Your Honor, I would disagree with that. I think if you read it that way, you have to render certain provisions in the selling agreement meaningless. It would be meaningless for there to be an express assignment of the representative's commissions. In order for that express assignment to be valid, there has to be a present and valid vested existing right at the title to commissions by virtue of the agreement. You would have to render that provision void. You would also have to render meaningless that the representatives get to select the type of commissions that they want to receive under the commission schedules. I don't believe that's the case here. The language of the contract is clear that representatives receive compensation. In fact, Section 9 specifically talks to compensation to the broker-dealer's representatives. It's that intent that is all that is necessary for representatives. Counsel, if we award relief directly from Ohio National to Mr. Cook and others, doesn't that violate FINRA because it becomes a direct payment without all the procedural requirements and hoops that you have to go through for direct payments? Absolutely not, Your Honor. The FINRA rule is an industry standard and it deals with a limited scenario if the party is going to agree to it. It does not have the effect of law. It was not congressional enactment. It's a non-governmental private corporation that sets forth these rules. It does not deal with this scenario here where the representatives have been denied a legal entitlement. It also does not deal with this scenario where Ohio National has violated industry standards. I see my time is getting low. I want to turn to the unjust enrichment claim because even if this court determines that the representatives are not third-party beneficiaries, there absolutely is an unjust enrichment claim here. I think this court's decision in Reisenfeld controls the unjust enrichment analysis. It's the exact type of scenario where you're dealing with a party that didn't have the commissions. It was able to get summary judgment against the party that it did have a contract with, but that party didn't have the commissions. What the Sixth Circuit said was that Reisenfeld must be able to go after the party that is withholding the unjust enrichment. We'll call it the enrichment side you've got. You have to show it's unjust. What is it that Ohio National obligated itself to when it undertook this agreement with Triad? Triad would seem to be in a position, perhaps, to have an unjust enrichment claim. I'm just not sure I understand why your clients, any more than Triad employees, have an unjust enrichment claim. Your Honor, I see my time is up. May I answer the question? They're not just employees here. It's an analogy. I'm making the analogy point. The employees of Triad would be hurt by this as well if Ohio National is doing less business with them. I'm just making the point. The same would be true with third-party contractors like your clients. Your Honor, in this case, we have a party that has indisputably been harmed by this. They're the ones that actually did the work. They're the ones that did the work based on the promise of the commissions. In this scenario, it's just like Reisenfeld. There is no third party. The broker dealers are not being asked to do anything, nor should they be here because the party that has been harmed absolutely should be able to go after those who have caused the harm, which is Ohio National. It's not the broker dealer. All right. You'll get your full rebuttal. Thank you. All right. Thank you, Your Honor. May it please the court, Marion Little, on behalf of the Ohio National appellees. Let me begin by answering Judge Sutton's question. There were two parties to this contract, the Ohio National parties on the one side, the broker dealer on the other side. Ohio National did terminate the selling agreement. It's our view that the trail commission obligation terminated, did not survive the termination of the selling agreement. That is a dispute. It has been litigated relating to those commissions between the broker dealer and my clients, not involving these individuals. In fact, that language has been made clear by the plain language of the contract, which, of course, is the starting point. We know that in Section 9, the contract tells us who is to be paid. Contract says the broker. The contract also says in Section 9 who is not to be paid, the investment representatives. That is a separate business arrangement between the broker dealer and the investment representatives. We don't know what those terms are. They're not before the court, but as made clear in the contract itself, it is not our business. What deal they strike is a dispute. They can bring that claim. We had several broker dealers in a similar situation. Some of them have filed. Some of them have not filed lawsuits. There is one class action that would include, if it was ever certified, the triad broker dealer. There is a remedy to the extent... Where is that case pending? Your Honor, that is pending in the Southern District of Ohio. That is a case that is effectively by triad against Ohio National. If triad wins that... Triad is the broker dealers, right? Not precisely, Your Honor. Triad is a putative class member. The broker dealer that filed that class action is called Veritas. It is pending before Judge Cole. That class action has not been certified as of date, but they are seeking certification of broker dealers in the same situation as Veritas, which would include triad. I guess what I'm trying to get at is if it were certified... Obviously, this is not that case. I'm just trying to figure out, would third-party representatives like Mr. Cook potentially benefit from any victory by the broker dealers? Theoretically, again, we don't know what the contract is between the broker dealers and the type of relationship per the plain language of Section 9. Theoretically, Your Honor, if in fact triad or the broker dealers were successful and they recovered the funds, presumably, they would honor whatever obligations they have with the investor. I got it. Hopefully, that answers the court's question. We know who is supposed to be paid, who is not supposed to be paid. What you heard counseled is try to twist those provisions so that they read the exact opposite as they are You don't rewrite the contract just because there is an unjust situation. The question is, who are the primary beneficiaries of the contract? Section 9 spells that out. I would suggest as clear as the day is long, Your Honor. There are other things to consider because counsel also suggested, this contract is really for the benefit of the investment representatives. Absolutely not. This contract is for the benefit of my clients who are selling variable annuities and needed a distribution system to make them available to the public. The provisions set forth in this contract are all designed to protect my clients. They are designed to ensure that the representatives are being supervised by the broker dealer, which is a requirement under FINRA rules, under federal law. They have to be registered to sell securities. That is a requirement of federal law. It is a requirement of the Blue Sky Statute. So, Mr. Little, the FINRA, are those guidelines or are those binding? That is a rule that is binding on broker dealers and associated members. The plaintiff is an associated member under the FINRA rules. These rules are absolutely binding. In fact, if you violate these rules, there are consequences both to an investment representative and a broker dealer. You will notice that one of the Ohio national parties to the contract is, in fact, a broker dealer as well. If you proceed in violation of these FINRA rules, you will lose your license to participate in the securities industry. That would apply to the individuals. That would apply to the broker dealers who were involved in violating that rule. It does not matter whether it is a criminal provision or not. We know the FINRA rules are part of the regulatory system for the securities industry in this country. One of the rules that we consider in construing a contract is one of the constructions offered that would render the contract illegal or in violation of public policy. We know the public policy as adopted by the U.S. Congress. Mr. Little, the Council raised the unjust enrichment claim. One could imagine, in the abstract, how could there be a different answer for the unjust enrichment claim from the third-party beneficiary claim. You can imagine one following from the other. There is this Reisenfeld case in our circuit, which does have a lot of similarities to our case. In that case, the claimant in Mr. Cook's position managed to win in our court. What do you say about that? Let me start off with a base of propositions. I will address that if I may. We start off with the first proposition, of course, being that where you have an express contract, and there is no dispute that the subject matter of the dispute relates to that express contract, you cannot plead in the alternative of an unjust enrichment. Otherwise, that would allow anyone to contract. You can imagine the situation in which every independent contractor, every investment representative, and every employee could then circumvent a contract that their employer has with another party to bring a direct action if you accepted that particular proposition. We know that the Ohio Supreme Court— It is an equitable doctrine, and a lot of things happen with equitable doctrines. That is right. The two points that have been made clear about this equitable doctrine under Ohio law, which is controlling here, is that first, if you have an express contract and there is no dispute about its existence, you cannot bring an alternative claim for unjust enrichment. The second proposition is, if the particular dispute arises under that particular express contract, you cannot bring an alternative claim for unjust enrichment. In this case, there is no dispute among the parties that an express contract exists. There is no dispute, as the courts already acknowledge, that the matter in dispute here, the payment of the commission, arises under that contract. You asked me how the Sixth Circuit dealt with this and the other matter. It is a simple answer, Your Honor. There, the court found that the party who had been sued had been engaged in fraud, and the court fashioned that for remedy because there had been fraud by that party. There was an express contract, but the contract was found not to be enforceable because of the fraud. That is not the situation. There has not been any allegations advanced below. In fact, there was never any argument made before the lower court that there has been any fraud committed by our client. The sole theory articulated in the papers was, you have not paid us the commissions, and that violates the contract. That is the sole so-called wrongs that have been identified in the complaint that is pending for the court's consideration now. I understand that in a hypothetical context, Your Honor. You certainly could have certain other situations, extreme situations like fraud, that may give rise to a potential claim for unjust enrichment following the Sixth Circuit's But that is not this case. This case is not one in which anyone has, either the trial court or by any other amendment to the pleadings, advanced any type of fraud claim. That really is what is determinative. When we think about a 12B6 or 12C motion, what did the plaintiff allege? The plaintiff only made a very narrow argument. They said, breach the contract, and because they breached the contract, we have been unjustly enriched. That is their entire theory. That theory does not survive a 12C analysis once the court concludes there is no third-party beneficiary standing under the selling agreement. Any other result, again, as I suggested, would have resulted in a situation where we would basically take the third-party beneficiary rule and throw it out the window. You can see how easy it would be to seem unfair. What is really interesting about this situation, they placed a lot of emphasis on the fact that these folks are independent contractors, or that these people are performing the services. That is the same situation you have with any entity such as a corporation. A corporation acts through its officers, directors, employees, and its independent contractors. That does not somehow change the analysis that a contract between the corporation and another party has to be enforced between those two parties and not by the agents that perform the services incidental to either one of those parties' performance under the contractual agreement. I am sorry, did you have a question? I do not think so. I saw the flashing cubes going around. Let me go back and just recap. There is no obligation to recap. Thank you, Ron. Again, from our perspective, you simply look at the plain language of the contract. Who is the primary beneficiary? Here we have a contract that tells us who that primary beneficiary is. It is the broker-dealer for the payment of the fees. It is us in terms of the services. As to the disputed matter, which is simply the payment of commissions, the reps are not the primary beneficiary. In fact, the contract disclaims that they are. The plaintiff in this case cannot circumvent that by advancing an unjust enrichment claim given what they have specifically admitted in the pleadings is that this is simply a fee dispute, which they claim they are under the contract and want to offer this alternative theory. I appreciate the Sixth Circuit's notion that there could be other extreme circumstances, but those extreme circumstances are not before the court today. I appreciate the court's attention in giving us an opportunity to be heard orally despite the incredible circumstances concerning the country. Thank you, Mr. Little. Mr. Garrett, you've got your rebuttal. Your Honors, I implore this court to look and consider the equities. The district court did not. This court absolutely should. Judge Sutton, you asked Ohio National about the Reisenfeld decision. Reisenfeld is directly on point. The notion that somehow it was distinguishable because it involves fraud is simply not the case. That was background noise in that case. It had nothing to do with the court's holding there. What the court recognized, as it should here, is that equity and unjust enrichment claim is a malleable doctrine. It's specifically designed for when a party does not have a remedy at law or where the remedy is inadequate. That is we have for equity. That's what equity came from. Fraud is not a precondition for Reisenfeld, and I take it you didn't allege fraud here? Absolutely not, Your Honor. The fraud was simply in the background. It was the reason why the party with whom the claimant had a contract with was unable to recover. It was unable to recover in that case because the party in which it did have a commission contract with, it engaged in fraud and didn't have any money. In that case, the claimant got summary judgment against that party, but the court still said, hold on, the money is being held by BSI. Even though you're not a third party beneficiary claimant, you must be able to go after the party that is wrongfully withholding your money. Wouldn't the Reisenfeld court have been interested in this other litigation to see whether there's a way for the representatives to get their money from Triad and other broker dealers? Your Honor, it's interesting, but it's a smoke and mirrors. This idea that somehow some other party may be willing to exercise its right, and if they do so and they're successful, you may be able to recover. The court should not be looking at that because what's before the court is Triad has not sued, and yes, there is another lawsuit out there that involves broker dealers. It may not be certified. There's no guarantee that all the broker dealers are going to opt into it. In fact, certain broker dealers, they've decided not to sue Ohio National because they have valid business reasons for doing so, and so that should not be a consideration here, and your ability to remedy a wrong should never be contingent on what some other party may be doing with their rights that they have. The fact of the matter is Ohio National has never challenged that the facts here show an unjust enrichment claim, and they absolutely do. The representatives performed all these benefits that are required under the selling agreement to become licensed and registered to sell these products. They actually did sell these products, and they were actually receiving the benefit. They were receiving the commissions up until one thing. One thing changed, and that's Ohio National terminated the selling agreement. There's no explanation other than that. We think they wanted to get out of the business, but all this work that the representatives have done, they deserve to be entitled to these commissions, and Ohio National knew about all this. It's absolutely unjust. For that reason, we'd ask for reversal. Thank you, your honors. Thanks to both of you for your helpful briefs and oral arguments. We're really grateful, and we realize it's unusual circumstances, but you did a great job, so thanks very much, and we appreciate it. The case will be submitted, and the clerk may call the next case.